UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL L. CRAWFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:10CV453TIA |
| | ) | |
| MICHAEL ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

This cause is on appeal from an adverse ruling of the Social Security Administration. The

parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

I.      **Procedural History**

Claimant Michael L. Crawford filed an application for Supplemental Security Income

payments pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et seq. (Tr. 161-

73).[1]  Claimant states that his disability began on May 21, 2007, as a result of left hip, leg and

back pain.  (Tr. 207).  On initial consideration, the Social Security Administration denied

Claimant's claims for benefits.  (Tr. 63-64, 79-83).[2]  Claimant requested a hearing before an

Administrative Law Judge ("ALJ").  (Tr. 60).  On April 8, 2009, a hearing was held before an

ALJ.  (Tr. 14-51).  Claimant testified and was represented by counsel.  (Id.).  Thereafter, on May

---

[1]"Tr." refers to the page of the administrative record filed by the Defendant with its Answer
(Docket No. 13/filed May 28, 2010).

[2]Claimant's application for Disability Insurance Benefits pursuant to Title II of the Social
Security Act, 42 U.S.C. §§ 401, et seq. was denied due to his work history being insufficient to
qualify for benefits.  (Tr. 66-68, 174-76).

6, 2009, the ALJ issued a decision denying Claimant's claims for benefits. (Tr. 5-13). After considering the contentions raised in the letter of Claimant's counsel, the Appeals Council found no basis for changing the ALJ's decision and denied Claimant's request for review of the ALJ's decision on January 28, 2010. (Tr. 1-4, 250-53). The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II.     Evidence Before the ALJ

### A.  Hearing on April 8, 2009

#### 1.  Claimant's Testimony

At the hearing on April 8, 2009, Claimant testified in response to questions posed by the ALJ and counsel. (Tr. 14-50). At the time of the hearing, Claimant was forty-one years of age. (Tr. 18). Claimant completed high school and some vocational training. (Tr. 18). Claimant lives with his eighteen year-old daughter. (Tr. 34). Since he stopped working, Claimant has not had a place of his own to live. (Tr. 45).

The ALJ indicated that Claimant could stand during the hearing at any point if he started to experience discomfort. (Tr. 29). Claimant requested to stand about eight to ten minutes into the hearing. (Tr. 32). The ALJ noted how Claimant leaned in his chair off to the right side before making the request to stand. (Tr. 45). Claimant testified he leaned in order to place pressure on the other side and to alleviate the pain. (Tr. 45).

Claimant testified that he was shot on December 31, 1992. (Tr. 31). After the injury, Claimant testified that loud noises cause him to be jumpy. (Tr. 32).

Claimant testified that he last worked in a wrecking yard using a jackhammer to cut open a hole in the street so that the water could be turned off during the demolition of a building. (Tr.

18-19).  Claimant used a shovel to dig four to five feet in depth to access the water line.  (Tr. 20).

Claimant would disconnect the pipe from the main line by hand using a crescent wrench and pipe

wrench.  (Tr. 21).  Claimant would disconnect twenty to thirty taps during a week.  (Tr. 22).

With the assistance of other workers, Claimant had to lift metal plates weighing around five

hundred pounds and about five to six square feet and approximately one inch thick.  (Tr. 22).

Claimant testified that it would take one hour to cut open the hole and another forty-five minutes

to an hour to dig out the hole and then five minutes to disconnect the pipe.  (Tr. 24).  Claimant

could complete five disconnects in one day.  (Tr. 24).  By the end of each day, Claimant

experienced much pain.  (Tr. 24-25).  Claimant's boss allowed him to take off a couple days at a

time as needed, but he eventually stopped working.  (Tr. 25).  Claimant stopped working in May

2007 after hurting all the time.  (Tr. 23).

In early 2000, Claimant worked in the bakery at Sam's Club for almost two years.  (Tr.

29).  The job required him to stand most of the time baking and decorating cakes.  (Tr. 29).

Claimant also received the meats and stocked the meat.  (Tr. 30).  Claimant had to lift boxes of

meat weighing twenty to thirty pounds.  Claimant also completed the clean up at the end of the

day.  Claimant worked as a presser at Dobbs and then at the gift shops at the airport shipping and

receiving merchandise.  (Tr. 30).

On May 21, 2007, Claimant received treatment in the emergency room, and the doctor

indicated that he should not bear any weight on his leg.  (Tr. 26).  Claimant complained of pain in

his left side.  (Tr. 29).  Claimant testified that he used crutches when he was first released from

the hospital and thereafter he used a cane until the cane broke.  (Tr. 46).

Claimant testified that he hurts every day - his hips, legs and back.  (Tr. 26).  Claimant

testified that his gunshot wound is on his left side, and a bullet is still lodged in his buttocks. Siting for a long time causes numbness and tingling on his right side and arm due to the pressure from the bullet resting on a nerve. (Tr. 26, 28). Claimant testified that the first doctor did not want to remove the bullet, because the bullet is located on a nerve. (Tr. 27). Claimant had his left hip repaired and then he had surgery to remove some of the rods. (Tr. 28).

Claimant testified that his left hip pain from the pressure on the nerve and his low back and leg pain prevent him from working. (Tr. 32-33). After removing the rod, bone started to grow out of the screw hole causing Claimant to experience pain. (Tr. 33). Sometimes Claimant stays in bed all day because of his pain. (Tr. 33). Claimant takes Tylenol or ibuprofen to alleviate the pain. (Tr. 34). Claimant testified that moving causes the pain to start. (Tr. 34, 42).

Claimant can dress without assistance but dressing is a slow process. (Tr. 34). Claimant testified that he stays home all the time and eats sandwiches. (Tr.35). After waking up, Claimant eats breakfast and then watches television and then dozes off. (Tr. 35). His daughter does the household chores and the grocery shopping. (Tr. 36). Claimant testified that he no longer has any hobbies. (Tr. 37). Claimant attends church every Sunday. (Tr. 37). Claimant's driver's license has been suspended due to tickets. (Tr. 37-38). Claimant testified that he could not drive for fear of having an accident caused by his leg numbness. (Tr. 38). Claimant testified that the more he walks, the more pain he experiences. (Tr. 39).

Claimant testified that he used public transportation to get to the hearing. (Tr. 38). First, Claimant caught a bus and then rode the MetroLink. (Tr. 39). Claimant walked approximately twelve blocks from the MetroLink station to the hearing. (Tr. 39). Claimant testified that lifting hurts his back. (Tr. 40). A broom is the heaviest object Claimant lifted in the last month. (Tr.

40).

Claimant testified that he missed his appointment with the orthopedic doctor in December 2008, and he had not rescheduled the appointment because he does not know how to use public transportation to get to the doctor's office. (Tr. 41-42). Claimant testified that he has not been treated by a pain specialist. (Tr. 42). Claimant testified that he experiences a constant headache on his left side but he has not received treatment because he has no money or means of transportation. (Tr. 43). Claimant testified that he missed an appointment scheduled for treatment of his blurry vision. (Tr. 43). Claimant testified that he had applied for Medicaid two months ago. (Tr. 44). Claimant testified that unless he has surgery so that he can use his legs, he cannot return to work. (Tr. 47, 49). Claimant testified that he would be willing to receive vocational training. (Tr. 49).

### 2. Forms Completed by Claimant

In the Disability Reports Adult, Claimant reported that he stopped working on May 21, 2007, after his doctor advised him he could not work because of his injury. (Tr. 207).

In the Function Report - Adult dated July 17, 2007, Claimant reported his daily activities to include job searches, visiting family and friends for meals and chores, watching television, and reclining when possible to alleviate pain. (Tr. 213). Claimant listed cleaning and household repairs depending on the severity of his pain as household chores he is able to do. (Tr. 215). Claimant reported being able to mow half the lawn. (Tr. 215). Claimant reported waking and using public transportation as his means of travel. (Tr. 216). Claimant reported watching television for two to three hours a day. (Tr. 217). Claimant reported visiting a lot with family and friends hoping for food, work, money, and shelter. (Tr. 217). Claimant visits a food panty

every day for food.  (Tr. 217).  Claimant reported that his doctor has advised him not to do any lifting and to refrain from most physical activities.  (Tr. 218).  Claimant noted that it is difficult to obtain employment when you have a conviction record.  (Tr. 220).

In the Work History Report dated July 17, 2007, Claimant reported his lifting and other activities have been limited since 1992due to injury from a gunshot wound.  (Tr. 228).

In the Function Report - Adult dated October 22, 2007, Claimant reported try to play with his children and sometimes babysitting.  (Tr. 231).  Claimant reported being recommended for surgery in May 2007 by the emergency room doctor but not being able to afford the surgery.  (Tr. 236).

## III.    Medical Records

On May 21, 2007, Claimant reported experiencing pain at the level ten on his left side of the pelvic and the pain radiating up to the left hip and down to the left thigh.  (Tr. 256-60).  Dr. Zarmeena Ali at St. Louis Connect Care noted Claimant's past medical history to include gunshot injury to right pelvis and left femur thirteen years ago, a gunshot wound to left leg with bullet lodged in buttocks twelve years ago, and a rod replaced in his left femur that has since been removed.  Claimant reported working in construction using a jack hammer to dig holes.  (Tr. 256).  Physical examination showed right hip flexion and rotation to be normal, crepitus in the right knee, left SLR negative with reduced flexion, and internal and external hip rotation to be painful.  (Tr. 257).  Dr. Ali observed antalgic gait with no weight bearing on the left leg.  Dr. Ali recommended no weight bearing until orthopedic evaluation.  (Tr. 257).  The x-ray of Claimant's right hip showed his hip to be okay and his left hip retained bullet fragments.  Dr. Ali ordered Ketoralic Tromethamine 30 mg for one day and Vicodin for fifteen days with no refills and to use

crutches.  (Tr. 258-59).  The radiology report showed no degenerative changes in both hip joints and possible osteochondromatosis left hip joint pain.   (Tr. 261).  The radiology report of his right hip showed minimal degenerative joint disease.  (Tr. 262).

On July 30, 2007, Claimant returned to St. Louis Connect Care and complained of pain in his left leg starting fifteen years earlier due to gunshot wound.  (Tr. 267-68).  Physical examination showed limited active and passive range of motion and tenderness to hip.  (Tr. 269).  Claimant reported reduced activity and being disabled and failure to physical therapy.  (Tr. 269).  The doctor prescribed medication as treatment and indicated that Claimant would be contacted about his appointment at St. Louis University.  (Tr. 267).

On February 20, 2008, Dr. Khalida Qalbani of St. Louis Connect Care treated Claimant's pain/swelling of his right knee after falling down stairs the day before.  (Tr. 283).  Claimant reported not taking any medications.  (Tr. 283).  Examination of his left knee showed swelling and tenderness with extension and flexion.  (Tr. 284).  Dr. Qalbani diagnosed Claimant with left knee pain and trauma and provided Claimant with a left knee immobilizer.  (Tr. 284).  Dr. Qalbani prescribed Ibuprofen and Darvocet for five days with no refills for pain as needed.  (Tr. 285-86).  The radiology report of Claimant's left knee showed minimal degenerative joint disease and old healed fracture of distal femur.  (Tr. 287).

On June 25, 2008, Dr. Bala Vittal Varanasi of St. Louis Connect Care treated Claimant for right knee/hip pain and left leg and pelvic pain and difficulty ambulating.  (Tr. 278).  Claimant denied taking any medications.  (Tr. 278).  Claimant reported not having money for co-pay and thus no follow up with primary care physician.  (Tr. 279).  Examination showed a decreased range of motion in Claimant's hips and knees.  (Tr. 280).  Tenderness elicited in bilateral knees and hips.

(Tr. 280).  Dr. Varanasi prescribed Ibuprofen and Darvocet as needed for pain and recommended a neurology consultation.  (Tr. 281-82).

On September 26, 2008, on referral, Dr. Earl Schultz, a neurologist at St. Louis Connect Care, treated Claimant for his muscle aches.  (Tr. 271, 289).  Claimant reported his paresthesia in both lower extremities getting worse since May 2007.  Dr. Schultz noted Claimant's falling down steps in June 2008 while carrying heavy objects and causing bilateral knee pain.  Claimant reported taking no medications.  (Tr. 271).  Claimant reported being in the process of disability application.  (Tr. 272).  Dr. Schultz diagnosed Claimant with joint pain and referred Claimant to an orthopedic surgeon for an appointment on December 1, 2008  and prescribed Neurontin.  (Tr. 273, 275, 290).  Examination showed that Claimant could not heel or toe walk and had a limited range of motion due to pain.  (Tr. 274).

On November 2, 2008, Michael Spezia, a doctor of osteopathy, evaluated Claimant at the request of his counsel.  (Tr. 292).  Claimant reported pain in his left hip, lower back, and right buttock region.   Claimant reported taking ibuprofen for inflammation and pain.  Claimant denied having abnormalities other than pain and limited range of motion in his left hips and cognitive deficits related to the pain.  (Tr. 292-93).  X-rays showed joint disease and demineralization in Claimant's left hip, and a bullet fragment in his right buttock.  (Tr. 293).  Dr. Spezia diagnosed Claimant with lumbosacral somatic dysfunction, early cognitive deficits, and generalized pain.  (Tr. 293).  Dr. Spezia opined that Claimant "is unable to perform regular duties of employment secondary to chronic pain, as well as limitation of motion of left hip.  He may well indeed require some additional surgical intervention of the left hip should symptoms persist and the patient

continues to have limitation of mobility."[3]  In the Medical Source Statement - Consultative

Examination, Dr. Spezia found that during an eight-hour period Claimant could sit for no more

than one hour, stand for no more than thirty minutes, and walk for no more than fifteen minutes.

(Tr. 295).  Dr. Spezia further found that Claimant could lift ten pound objects for up to five

hours, carry ten pound objects for up to two hours, and carry five pound objects for up to five

hours, but he could never lift or carry twenty pounds or more.  (Tr. 295).  Dr. Spezia found that

Claimant could not balance or focus on simple tasks for eight hours, five days a week.  (Tr. 296).

Dr. Spezia noted that Claimant has muscle atrophy, muscle spasms, and reduced range of motion.

(Tr. 296).  Dr. Spezia found that Claimant's pain would cause him to leave work early twice a

month and require him to take more than three breaks during an eight-hour day.  (Tr. 296-97).

## IV.    The ALJ's Decision

The ALJ found that Claimant has not engaged in substantial gainful activity since May 21,

2007, the alleged onset date of disability.  (Tr. 12).  The ALJ found that the medical evidence

establishes that Claimant has the impairments of minimal to moderate degenerative joint disease of

the hips and minimal degenerative joint disease of the left knee.  The ALJ opined that Claimant's

allegation of impairments, either singly or in combination, producing symptoms and limitations

sufficient severity to prevent the performance of all sustained work activity is not credible.  The

ALJ determined that Claimant has only slight abnormalities that do not significantly affect the

performance of any basic work-related activities and, therefore, he does not have a severe

impairment.  The ALJ concluded that Claimant is not under a disability at any time through the

---

[3]A physician's opinion that a claimant is "disabled" or "unable to work" does not carry
"any special significance," 20 C.F.R. § 416.927(e)(1), (3), because it invades the province of the
Commissioner to make the ultimate determination of disability.  House v. Astrue, 500 F.3d 741,
745 (8th Cir. 2007).

date of his decision.  (Tr. 12).

## V.    Discussion

In a  disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability.  <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001).  Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); <u>see</u> <u>also</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled.  First, the ALJ must determine whether the individual is engaged in "substantial gainful activity."  If she is, then she is not eligible for disability benefits.  20 C.F.R. § 404. 1520(b).  If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  If the claimant is not found to have a severe impairment, she is not eligible for disability benefits.  If the claimant is found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be

conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed or is not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work. If the claimant can still perform past work, she is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy. In step five, the ALJ must consider the claimant's "age, education, and past work experience." Only if a claimant is found incapable of performing other work in the national economy will she be found disabled. 20 C.F.R. § 404.1520(f); see also Bowen, 482 U.S. at 140-41 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall, 274 F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. The court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The claimant's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the claimant's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting

Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The ALJ's decision whether a person is disabled under the standards set forth above is conclusive upon this Court "if it is supported by substantial evidence on the record as a whole." Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (quoting Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008)). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." Wiese, 552 F.3d at 730 (quoting Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004)). When reviewing the record to determine whether the Commissioner's decision is supported by substantial evidence, however, the Court must consider evidence that supports the decision and evidence that fairly detracts from that decision. Id. The Court may not reverse that decision merely because substantial evidence would also support an opposite conclusion, Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001), or it might have "come to a different conclusion." Wiese, 552 F.3d at 730. Thus, if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, the [Court] must affirm the agency's decision."

Wheeler v. Apfel, 224 F.3d 891, 894-95 (8th Cir. 2000). See also Owen v. Astrue, 551 F.3d 792, 798 (8th Cir. 2008) (the ALJ's denial of benefits is not to be reversed "so long as the ALJ's decision falls within the available zone of choice") (internal quotations omitted).

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ erred by not finding Claimant to have a severe impairment and to be credible.

A.     Severity of Claimant's Impairments

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ erred by not finding Claimant to have a severe impairment and to be credible.

In his application for disability benefits, Claimant alleged disability due left hip, leg and back pain. The ALJ found Claimant has only slight abnormalities not significantly limiting the performance of any basic work activities, and concluded that the impairments, alone or in combination, are not of listing level. The Social Security regulations define a nonsevere impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. See 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521(b), 416.921(b). In finding Claimant's impairments not to be severe impairments, the ALJ based his determination predominantly on his finding that Claimant's subjective allegations were not credible. The ALJ

also considered the gaps in medical treatment showing Claimant's impairments not to be severe. The ALJ noted how the medical evidence established only minimal degenerative changes of the right hip and left knee, and moderate degenerative joint disease of his left hip.[4] Accordingly, the ALJ determined that the impairments did not have more than a minimal impact upon the Claimant's ability to engage in basic work-related activities such that it did not satisfy 20 C.F.R. §§ 404.1521 and 404.921.

The record shows that the ALJ did consider the nature of Claimant's impairments in reaching his decision. The ALJ noted how some of Claimant's allegations pre-date his alleged onset date of disability and never prevented Claimant from working. The record shows that when Claimant's impairments are treated, either by medication or some milder form of conservative treatment measure, the impairments respond and abate. The ALJ noted that the x-ray records showed only minimal degenerative changes of his right hip and left knee, and moderate degenerative joint disease of his left hip. The Court finds Claimant's contention that the ALJ erred in failing to find his impairments to be severe impairments and to determine their effect on his limitations to be without merit.

The ALJ next noted that the treatment gaps in the medical record undermine Claimant's credibility concerning his allegations of disabling pain and disabling impairments. Edwards v. Barnhart, 314 F.3d 964, 968 (8th Cir. 2003) (claimant's failure to pursue regular medical

---

[4]Claimant's contention that Dr. Qalbani prescribing a left knee immobilizer constitutes evidence of a severe impairment is without merit. On February 20, 2008, Claimant sought treatment for pain/swelling of his right knee after falling down stairs the day before. Claimant reported not taking any medications and examination of his left knee showed swelling and tenderness with extension and flexion. Dr. Qalbani diagnosed Claimant with left knee pain and trauma and provided Claimant with a left knee immobilizer. The radiology report of Claimant's left knee showed minimal degenerative joint disease and old healed fracture of distal femur.

treatment detracted from credibility). Such gaps suggest that Claimant's subjective complaints of disabling pain are not entirely credible. See Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir. 1995) (citing Benskin v. Bowen, 830 F.2d 878, 884) (8th Cir. 1987) (holding that the "claimant's failure to seek medical treatment for pain" is a legitimate factor for an ALJ to consider in rejecting a claimant's subjective complaints of pain). "[T]he failure to seek medical treatment for such a long time during a claimed period of disability tends to indicate tolerable pain." Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995); see Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 1994) (holding that infrequent treatment is a basis for discounting subjective complaints). After first seeking treatment for his hip and leg pain in May and July 2007, Claimant failed to seek further treatment until February 2008, almost seven months later. When Claimant returned for treatment in February 2008, he reported experiencing hip and knee pain after he missed two steps causing him to fall down a flight of stairs while carrying a heavy objects. The treating doctor attributed Claimant's knee pain to the fall. In the following seven months, despite his doctors' instructions to seek follow-up treatment, Claimant sought medical treatment for his hip and knee pain on two occasions, June 25 and September 26, 2008. On September 26, 2008, although Dr. Schultz instructed Claimant to seek treatment with an orthopedic surgeon, Claimant failed to keep the scheduled appointment in December 2008 or seek any other medical treatment for his disabling pain. Likewise, the ALJ noted how Claimant failed to appear for the orthopedic examination scheduled on December 1, 2008. See Shannon v. Chater, 54. F.3d 484, 486 (8th Cir. 1995) ("While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem."). Seeking limited medical treatment is inconsistent with claims of disabling pain. Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991). In this matter, the record does

not establish that Claimant did not seek medical treatment because of limited resources. Although Claimant cites to a notation in a treatment note that Claimant has not had follow-up treatment with a primary care physician due to no money for co-payment, even assuming that Claimant's financial resources were insufficient, the record does not reflect that Claimant sought financial aid or treatment offered to indigents.[5]

The ALJ further noted that no treating or examining doctor had found Claimant to be disabled or totally incapacitated or ordered any work limitations. The ALJ also noted that the medical records do not show any significant, uncontrollable adverse side effects from any of Claimant's prescribed medications. Indeed, although prescribed pain medications, Claimant reported on a number of occasion s not taking pain medications except for Ibuprofen. "A claimant's allegations of disabling pain may be discredited by evidence that he or she has received

---

[5]The record is devoid of evidence suggesting that Claimant sought and received treatment offered to indigents. See Nelson v. Sullivan, 966 F.2d 363, 367 (8th Cir. 1992)(holding the mere use of nonprescription pain medication is inconsistent with complaints of disabling pain); Murphy v. Sullivan, 953 F.2d 383, 386-87 (8th Cir. 1992)(finding it is inconsistent with the degree of pain and disability asserted where no evidence exists that claimant attempted to find any low cost medical treatment for alleged pain and disability). Except for the notation in the treatment note, the record does not document that Claimant was ever refused treatment due to insufficient funds. See Osborne v. Barnhart, 316 F.3d 809, 812 (8th Cir. 2003) (recognizing that a lack of funds may justify a failure to receive medical care; however, a plaintiff's case is buttressed by evidence he related of an inability to afford prescriptions and denial of the medication); Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (If a claimant is unable to follow a prescribed regimen of medication and therapy to combat his difficulties because of financial hardship, that hardship may be taken into consideration when determining whether to award benefits); Murphy, 953 F.2d at 386. The fact that a claimant is under financial strain, however, is not determinative. Id. Here, as the ALJ points out, the record is devoid of any credible evidence showing that Claimant was denied treatment due to lack of finances and thus inferred that Claimant did not seek more frequent medical treatment more often, because he did not have a medical need for such treatment. Case law permits the ALJ's reasonable inferences. See Pearsall v. Massanari, 274 F.3d 1218. Likewise, the record is devoid of any evidence showing that Claimant had been denied medical treatment or access to prescription pain medications on account of financial constraints. See Clark v. Shalala, 28 F.3d 828, 831 n.4 (8th Cir. 1994).

- 16 -

minimal medical treatment and/or has taken medications, other than aspirin, for pain only on an occasional basis." Williams v. Bowen, 790 F.2d 713, 715 (8th Cir. 1986); see also Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) (claimant's use of relatively mild pain medication weighed against complaints of disabling pain); Goodale v. Halter, 257 F.3d 771, 774 (8th Cir. 2001).

Claimant's activities of daily living provide further support of the ALJ's credibility determination. Although Claimant reported in the Function Report - Adult that he could only walk ten feet before needing to rest, at the hearing he testified that he walked twelve blocks from the MetroLink station to the hearing. (Tr. 38-39, 218); see Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006) (an ALJ may discredit claimant based upon statements that conflict with other record evidence). Claimant further reported his daily activities to include job searches, visiting family and friends for meals and chores, watching television, and reclining when possible to alleviate pain. (Tr. 215). Claimant listed cleaning and household repairs depending on the severity of his pain as household chores he is able to do and being able to mow half the lawn. (Tr. 215). Claimant reported waking and using public transportation as his means of travel. (Tr. 216). Claimant reported visiting a lot with family and friends hoping for food, work, money, and shelter. (Tr. 217). Although Claimant testified that he has difficulty sitting, he reported watching television for two to three hours a day. (Tr. 217). See Hensley v. Barnhart, 352 F.3d 353, 357 (8th Cir. 2003); Ply v. Massanari, 251 F.3d 777, 779 (8th Cir. 2001) (noting a claimant's inconsistent statements as a factor to consider in determining claimant's credibility).

"'[A]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'" Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010)

(quoting Heino v. Astrue, 578 F.3d 873, 881 (8th Cir. 2009)).  Such acts include looking for

work.  See Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995) ("[T]his record of contemplating

work indicates [the claimant] did not view his pain as disabling.").  Claimant reported job searches

as one of his daily activities.  (Tr. 215).  This testimony detracts from Claimant's credibility.  The

undersigned notes that Claimant reported in the Function Report - Adult, difficulty in obtaining

employment due to his conviction, not his disabling pain.  See Lindsay v. Astrue, No

08cv892GAF, 2009 WL 2382337, at *3 (W.D. Mo. July 30, 2009) ("Plaintiff reported looking

for work and contacting temporary agencies.  These statements are inconsistent with disability

and indicate that Plaintiff did not view his pain as disabling.").

Finally, the ALJ noted that Claimant's earnings record undermined his credibility regarding

the severity of his impairments alleged and his overall motivation to work versus motivation for

benefits inasmuch as his record documents a scattered and somewhat erratic work record.  A

consistent work record supports a claimant's credibility, see Hutsell v. Massanari, 259 F.3d 707,

713 (8th Cir. 2001); conversely, an inconsistent work history does not, see Frederickson v.

Barnhart, 359 F.3d 972, 976 (8th Cir. 2004); Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir.

2002); see also Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2002) (a poor work history

"may indicate a lack of motivation to work, rather than a lack of ability.").

The ALJ considered the medical record and the diagnoses by all the treating physicians

and explained why he was crediting the diagnosis of some of the doctors and not crediting the

diagnosis of other doctors.  Based on the objective medical evidence, the ALJ  determined

Claimant's impairments not to be severe impairments, and the undersigned finds that substantial

evidence supports the ALJ's determination.  The undersigned notes that where there are conflicts

in the evidence, the resolution of such conflicts is for the Commissioner, and not the Court, to make. Cantrell v. Apfel, 231 F.3d 1104, 1107 (8th Cir. 2000); Beasley v. Califano, 608 F.2d 1162, 1166 (8th Cir. 1979). This is so even when the medical evidence is in conflict. Cantrell, 231 F.3d at 1107; Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995)("Where the medical evidence is equally balanced, ... the ALJ resolves the conflict."). "It is the ALJ's function to resolve conflicts among the various treating and examining physicians." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (internal quotation marks omitted).

Nonetheless, the ALJ then addressed several inconsistencies in the record to support his conclusion that Claimant's complaints of constant pain were not credible. The credibility of Claimant's subjective complaints is especially important. Specifically, the ALJ noted that no treating physician stated that Claimant was disabled or unable to work. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints). In addition, the ALJ noted that no physician had ever made any medically necessary restrictions, restrictions on his daily activities, or functional or physical limitations. The lack of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints. See Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995)(lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994)(the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of

her testimony and of her complaints).  Likewise, the ALJ noted that Claimant received

conservative medical treatment.  See  Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995)

(failure to seek aggressive medical care is not suggestive of disabling pain); Walker v. Shalala,

993 F.2d 630, 631-32 (8th Cir. 1993)(lack of ongoing treatment is inconsistent with complaints of

disabling condition).  The medical record is devoid of any evidence showing that Claimant's

condition had deteriorated or precluded him from working in the past.  See Orrick v. Sullivan,

966 F.2d 368, 370 (8th Cir. 1992) (claimant not considered disabled when claimant worked with

an impairment over a period of years absent significant deterioration).  Indeed, the ALJ stated that

despite Claimant's testimony regarding constant pain, the medical evidence shows that Claimant's

pain was controlled with over-the-counter medications.  Harris v. Barnhart, 356 F.3d 926, 930

(8th Cir. 2004) (claimant's use of over-the-counter medication was inconsistent with allegations

of disabling headaches and supported adverse credibility determination).  Indeed, Claimant

reported on a number of occasions not taking any medications.  See Hall v. Chater, 109 F.3d

1255, 1258 (8th Cir. 1997) (lack of strong pain medication inconsistent with subjective

complaints of disabling pain.  Likewise, the ALJ stated the record failed to reveal Claimant's

medication not to be effective, or that Claimant suffered severe side-effects.  Johnson v. Apfel,

240 F.3d 1145, 1148 (8th Cir. 2001); Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999).  The

ALJ further noted inconsistencies between Claimant's subjective complaints of pain and his daily

activities.

The undersigned finds that the ALJ considered Claimant's subjective complaints on the

basis of the entire record before him and set out the inconsistencies detracting from Claimant's

credibility.  See Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003) (if ALJ explicitly discredits

claimant and gives good reasons for doing so, the courts normally defer to his credibility determination). The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole. Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). The ALJ pointed out inconsistencies in the record that tended to militate against the Claimant's credibility. Those included Claimant's minimal treatment for pain, his lack of work restrictions by any physicians, his gap in medical treatment, his infrequent, conservative medical treatment, activities of daily living including looking for work, and poor work record. The ALJ's credibility determination is supported by substantial evidence on the record as a whole, and thus the Court is bound by the ALJ's determination. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992). Accordingly, the ALJ did not err in discrediting Claimant's subjective complaints of constant pain. See Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001)(affirming the ALJ's decision that claimant's complaints of pain were not fully credible based on findings, inter alia, that claimant's treatment was not consistent with amount of pain described at hearing, that level of pain described by claimant varied among her medical records with different physicians, and that time between doctor's visits was not indicative of severe pain). The ALJ noted that despite his allegations of persistent pain, Claimant has not received ongoing medical attention or treatment for his pain. Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004) ("Infrequent treatment is also a basis for discounting a claimant's subjective complaints."). The lack of strong prescription pain medication supports the ALJ's findings. See Rankin v. Apfel, 195 F.3d 427, 430 (8th Cir. 1999).

The ALJ properly weighed the medical opinions on the record and accorded "no weight to the one-time, attorney arranged, examination and resulting opinion by Dr. Spezia, insofar as his findings and conclusions are based primarily on subjective allegations and demonstrations by the

claimant, which I find to be fundamentally exaggerated and not credible." (Tr. 10). See Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the ALJ was entitled to give less weight to the opinion of a treating doctor where the doctor's opinion was based largely on the plaintiff's subjective complaints rather than on objective medical evidence). Indeed, the ALJ noted that no other treating or examining doctor found Claimant to be disabled or totally incapacitated. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints). Nor had any doctor ever imposed any specific long-term limitations on Claimant's abilities to stand, sit, walk, bend, lift, carry, or do any other basic exertional activities. Indeed, Claimant testified that he walked twelve blocks from the MetroLink station to the hearing. The ALJ noted how Claimant never received consistent medical treatment for his alleged musculoskeletal impairments nor had Claimant ever had regular medical treatment for his acute medical problems. Casey v. Astrue, 503 F.3d 687, 693 (8th Cir. 2007) (failure to seek regular treatment is not consistent with complaints of disabling pain).

The substantial evidence on the record as a whole supports the ALJ's decision. See Samons v. Astrue, 497 F.3d 813, 818 (8th Cir. 2007) (finding that substantial evidence supported the ALJ's decision where there were too many inconsistencies in the case). Those included Claimant's testimony at the hearing, the absence of objective medical evidence of deterioration, the absence of any doctor finding Claimant disabled or imposing any functional limitations, his failure to seek regular and sustained treatment, medical noncompliance, and his ability to work until March 2003 when he was laid off from his job. Where substantial evidence supports the

Commissioner's decision, the decision may not be reversed merely because substantial evidence may support a different outcome.  Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (quoting Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992)).

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole.  Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently.  Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001).  Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

Therefore, for all the foregoing reasons,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that  the final decision of the Commissioner denying social security benefits be **AFFIRMED**.

Judgment shall be entered accordingly.


_____  /s/ Terry I. Adelman_____
UNITED STATES MAGISTRATE JUDGE

Dated this   _31st_   day of March, 2011.